# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**PATRICK BIESTY,**

    Plaintiff,

v.                                            Case No. 8:10-cv-1667-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    Defendant.
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. The Plaintiff urges that his case be reversed and remanded for further consideration because the ALJ erred in failing to find Plaintiff's obesity to be a severe impairment and in failing to consider Plaintiff's need to use a cane and leg brace for standing as well as balance when determining his residual functional capacity. For the reasons set out herein, the decision is affirmed.

A.

Plaintiff was forty-six years of age at the time of his administrative hearing in September 2009. He stands 5 feet 10 inches tall and weighed 285 to 290 pounds. Plaintiff has a ninth grade education. His past relevant work was as a riveting machine operator and a material handler. Plaintiff applied for disability benefits and Supplemental Security Income payments in September 2007, alleging disability as of August 23, 2003, by reason of partial

amputation of his left foot, left arm numbness, back pain, high blood pressure, underactive thyroid, high cholesterol, and right knee pain. The Plaintiff's applications were denied originally and on reconsideration.

A de novo hearing was conducted by an Administrative Law Judge (ALJ) on September 8, 2009. Plaintiff, who was represented at the hearing, testified that he is unable to work because of pain in his back, legs, neck, and hip and numbness in his left arm. He testified that he has scoliosis resulting from walking crooked so many years due to his left leg being shorter than the right.[1] He currently takes Tylenol or Advil for the pain which provides some relief, but does not eliminate the pain. Because of the pain he experiences, he is unable to stand for any length of time and he is unable to bend. Standing longer than a minute causes him to have severe pain in the lower right side of his back. He has been unable to do any type of walking or exercise for approximately two years. He has been using a cane since his accident of 1985 when his left foot was partially amputated. He wears a brace on his left leg which gives him support. Plaintiff also complains of problems sitting which causes his back and neck to be uncomfortable. Shifting positions or twisting a little helps alleviate the pain from sitting. Plaintiff has undergone mental health treatment and has been taking Prozac and Valium for about a month and a half. Symptoms from his anxiety and depression include difficulty concentrating and sleeping. He did not seek mental health counseling previously due to lack of insurance. Plaintiff complains that he wakes up constantly at night, about every half hour, and when he does sleep, it is not restful. He describes his back pain as being the

---

[1] Plaintiff has a history of a partial amputation of the toes on his left foot and a compound fracture of his left tibia following a motorcycle accident in 1985.

most significant with his left leg pain being second most significant. At the time of his hearing, Plaintiff weighed approximately 285 to 290 pounds which he testified was higher than normal and was a result of his inability to exercise.

Plaintiff testified that he has not worked since August 2003 when he was laid off from his job due to a lack of work. He looked for work for about a year, but stopped looking in 2004 when his back started bothering him. He collected unemployment benefits for six months during that year. Plaintiff has a car but does not drive it because he cannot afford the insurance. When he was driving, he would only drive about five miles per week.

Plaintiff estimates that he has to lay down 10 to 15 times throughout the day which helps stretch his back out. He has as many bad days as good. On a bad day, his back is very painful and he cannot get anything accomplished. As for daily activities, he is able to dress and groom himself, but he has to sit down to shower because he cannot stand long enough. He does not engage in any social activities because of his pain. He is able to grocery shop for himself, but uses an electric cart. He is not able to do much housework. If he does laundry, he has to take breaks between hanging the laundry because of his back and leg pain. (R. 313-25).

The ALJ next took testimony from Joyce Ryan, a vocational expert (VE). In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education and work history capable of a restricted range of light work activity, with the need to sit and stand, and to ambulate with the use of an assistive device, and involving simple routine repetitive tasks embraced by the lower-end, semi-skilled and

unskilled occupational base. On such hypothetical, the VE opined that Plaintiff would be unable to perform his past work which the VE characterized as exertionally medium to heavy and semi-skilled to skilled. However, the VE testified that based on such hypothetical, there would be other jobs in the local and national economy that the Plaintiff could perform, including assembler of small parts, a pari-mutual ticket seller, and assembler of plastic hospital products. The VE further testified that the tolerance for absenteeism in these positions would be approximately one day per month. Plaintiff's counsel did not question the VE. (R. 325-27).

On October 27, 2009, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the lumbar spine and hepatitis C without treatment, he nonetheless had the residual functional capacity to perform a restricted range of light exertional work[2] with a sit/stand option. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-24). The Appeals Council denied Plaintiff's request for review.

---

[2]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Social Security disability benefits and Supplemental Security Income payments a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff's initial complaint is that the ALJ failed to find his obesity a severe impairment and failed even to discuss his obesity and the effect that the obesity had on his other impairments. In factual support, he cites his testimony at the administrative hearing that he is 5 feet 10 inches tall and weighed 285 to 290 pounds. Additionally, medical records indicated Plaintiff's weight at 303 pounds in August 2006 and 260 pounds in November 2007. Dr. Braunstein noted Plaintiff's obesity in his notes of October 20, 2008, and December 15, 2008. Despite this evidence of record, the ALJ failed to make any mention of Plaintiff's obesity in his decision. By Plaintiff's argument, his obesity was a severe condition and the

ALJ's failure to consider Plaintiff's obese condition, particularly in light of the findings that Plaintiff suffered from lumbar degenerative disc disease, necessitates a remand with directions to properly consider Plaintiff's obesity and its effect in combination with Plaintiff's other impairments. (Doc. 26 at 6-9).

In response, the Commissioner submits there is no error requiring reversal given that Plaintiff never alleged that his weight or obesity affected his ability to work and he fails to demonstrate that his obesity imposed additional limitations on his ability to work beyond those determined by the ALJ. While conceding that Plaintiff's medical records document his obese condition, the Commissioner urges that the mere diagnosis of a condition does not necessarily impact one's ability to work and here, no doctor limited his ability to work by reason of the condition. Finally, the Commissioner argues that the decision demonstrates that the ALJ considered the combined effects of Plaintiff's impairments in determining Plaintiff was capable of a reduced range of light work. (Doc. 27 at 3-6).

Initially, insofar as Plaintiff urges error at step two of the five-step evaluation process dictated by the regulations for the failure to identify obesity as a severe impairment, the claim is not well founded. At step two, the ALJ is called upon to determine whether a claimant's impairments are severe. *See* 20 C.F.R. §§ 404.1520, 416.920. Plaintiff is correct that in application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of

age, education, or work experience. *Id.* However, the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). Furthermore, as with other impairments, obesity is a severe impairment only if the record evidence demonstrates that it affected Plaintiff's ability to perform basic work activities. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Here, Plaintiff neither claimed nor demonstrated such or that the condition in combination with his degenerative back impairment affected his functional ability. In any event, the decision reflects that the ALJ found Plaintiff had two severe impairments at step two and thus there was no error at this step in the evaluation.

As for Plaintiff's claim that the ALJ nonetheless failed to discuss the effect of his obesity on his ability to sustain routine movement and work activity anywhere in his evaluation, it is worth noting at the outset that the Commissioner appears correct in asserting that Plaintiff did not claim that his weight or obesity affected his function. This fact alone suggests Plaintiff is not entitled to relief on this claim. *See, e.g., Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (claimant never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing; thus, his claim was waived from being raised on appeal); *James v. Barnhart*, 177 Fed. Appx. 875, 878 n. 2 (11th Cir. 2006) (unpublished)[3] (ALJ did not err by failing to find obesity a severe impairment where,

---

[3]Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. *See* 11th Cir. Rule 36-2; *United States v. Tamari*, 454 F.3d 1259, 1262

during her own testimony, plaintiff did not claim that her obesity was a functional impairment); *Bowser v. Comm'r,* 121 Fed. Appx. 231, 236-37 (9th Cir. 2005) (unpublished) (holding that the ALJ did not err in failing to discuss obesity where, among other things, plaintiff did not claim it as disabling or raise it before the ALJ, and no physician opined that plaintiff's weight caused her afflictions). However, it appears Plaintiff's claim also fails because the medical evidence does not support that his weight aggravated or otherwise further degraded his functional capacity.

Plaintiff's height and excessive weight are well documented in the record.[4] And, Plaintiff is correct that in the circumstances, his obesity was a factor appropriate for consideration by the ALJ as such condition can cause further degradation of a claimant's physical capacity, especially in the presence of his back impairment. *See* SSR 02-1p. However, as the Commissioner notes, a diagnosis of obesity alone does not equate with a finding of severity. *See, e.g., Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005) (unpublished) (ALJ correctly determined obesity non-severe because it did not cause further degradation of her residual functional capacity). While the ALJ did not expressly note the

---

n.4 (11th Cir. 2006).

[4]A review of the medical evidence reveals that Plaintiff's weight was documented throughout the medical record as fluctuating between 255 and 305 pounds. *See* (R. 123, 169, 180, 191, 198, 204, 216, 231, 236, 237, 238, 240). At his administrative hearing in September 2009, Plaintiff testified he was 5'10" and weighed 285 to 290 pounds. (R. 313). A Disability Report documented Plaintiff's height as 5'11", and weight at 245 pounds. (R. 123). Medical records report Plaintiff's height from 5'9" to 6'0". *Compare* (R. 198, 204, 216) with (R. 240). There were two references in the medical records of Dr. Alan T. Braunstein, M.D., in October and December 2008 as to Plaintiff being obese (R. 231, 236). Additionally, the consultative examiners make reference to Plaintiff's obese or moderately obese condition. (R. 180, 204).

9

Plaintiff's weight, he reviewed numerous records reflecting the same. And, significantly, there is no report or indication from any medical provider that Plaintiff's obesity further impaired his ability to work beyond that ultimately assessed by the ALJ. Thus, while Plaintiff has demonstrated that the medical record documents his excessive weight and notations for obesity, he has pointed to no evidence of record suggesting that his capacity for a reduced range of light work was further impacted by his obesity during the period at issue. As noted by the ALJ, Dr. Stanley Rabinowitz, M.D. evaluated Plaintiff twice. While noting the condition of Plaintiff's lower extremities and his complaints of pain, the doctor's clinical findings were generally normal apart from moderate motor weakness and disuse atrophy in the left lower leg with a reduced range of motion. (R. 18, 168-74, 197-202). The ALJ also noted the similar findings by consultative examiner, Dr. Adam Greenfield, D.O. A review of his examination report from February 2009 revealed generally normal clinical findings apart from the left leg deformity. Significantly, Dr. Greenfield expressly noted that "[t]he patient's height, weight, blood pressure, pulse rate and medications were reviewed and I find no problem in this region." (R. 241). Both Rabinowitz and Greenfield noted Plaintiff's use of a cane to walk but Greenfield's report suggested an improvement in Plaintiff's ability to walk without a cane. The ALJ also cited the records from the Helping Hands Healing Center and a vocational evaluation from the Boley Centers for Behavioral Health Care, Inc. ("Boley Centers"). Neither of those records speak directly to Plaintiff's weight. *See* (R. 183-88, 269-85).[5] Regarding the records from Advanced Healthcare Alternatives (R. 231-38), the ALJ

---

[5]The vocational assessment at the Boley Centers concluded that it was premature for Plaintiff to consider employment at the time based on high levels of anxiety and depression. It

correctly noted the records revealed "conservative" treatment. (R. 21, 231-38). Further, those records contain reports from two MRIs, one of Plaintiff's right knee and the other of his left shoulder. Neither revealed anything particularly pertinent or significant. *See* (R. 234-35). Those records also reveal that Plaintiff had lost 47 pounds in one year having gone from 305 pounds in 2007 to 258 pounds in October 2008. (R. 237).

Although we all would have been better served had the ALJ specifically addressed Plaintiff's weight, this court, as well as others, have found that an ALJ did not err in failing to do so in similar circumstances. *See Ingram v. Astrue*, No. 8:07-cv-1591-T-27TBM, 2008 WL 2943287, at *7 (M.D. Fla. July 30, 2008) (ALJ did not err in failing to specifically address plaintiff's obesity where plaintiff could point to no evidence of record, including his own testimony, to suggest his capacity for sedentary work was further reduced by his obesity); *McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) (no error in ALJ's failure to specifically discuss claimant's obesity where nothing in the medical records indicated that a physician ever placed physical limitations on the claimant's ability to perform work-related functions because of her obesity and claimant failed to testify at her hearing as to any work-related limitations due to her obesity); *Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004) (although treating doctors noted that plaintiff was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not

---

further recommended that when he was ready, he should consider several type jobs. (R. 284). Positions should be "entry level," where Plaintiff may "alternate between sitting and standing," and tasks should be "repetitive and routine in nature." (R. 285). As the decision reflects, the ALJ ultimately rejected the psychological assessment related to anxiety/depression from Boley Centers as not supported by the evidence. Such is not challenged on this appeal. Otherwise the assessment was given significant weight. (R. 22).

11

testify that his obesity imposed additional restrictions.); *but see Early v. Astrue*, 481 F. Supp. 2d 1233, 1239-40 (N.D. Ala. 2007) (ALJ erred in failing to consider obesity as a factor in determining claimant's RFC where her treating physicians repeatedly listed obesity in their treatment notes). Here, no treating, examining or reviewing physician suggested that Plaintiff's obesity imposed any additional work-related limitations and Plaintiff did not allege any limitation in function as a result of his obesity in his application for benefits (R. 95, 124) or during the hearing (R. 313). Moreover, counsel for Plaintiff had every opportunity to develop the record in this regard but chose not to do so. Under these circumstances, Plaintiff is not entitled to relief. *See, e.g., Anderson*, 344 F.3d at 814; *James*, 177 Fed. Appx. at 878 n.2; *Bowser*, 121 Fed. Appx. at 236-37.

Finally, insofar as Plaintiff complains that the ALJ failed to consider the combined effect of his impairments because he failed to consider his obesity in light of his degenerative disc disease, in light of the findings above, I am constrained to find that Plaintiff demonstrates no error warranting a remand on this basis. The decision reflects that the ALJ recognized his obligation to consider the combined effect of Plaintiff's impairments. For example, the ALJ acknowledged that "an impairment or combination of impairments is severe . . . if . . .," and when the claimant has a "severe impairment or combination of impairments," all medically determinable impairments must be considered in the remaining steps of the sequential analysis. (R. 14). Additionally, the ALJ found that, while Plaintiff had severe impairments, he did not have "an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 16). The

Eleventh Circuit has held that findings such as these suffice in evidencing consideration of the combined effects of a claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). Further, as set forth above, the decision reflects that the ALJ considered the whole of Plaintiff's medical records including his pain complaints and limitations arising from such pain. Despite the failure to acknowledge his obesity, there is no limitation demonstrated, from the record or on this appeal, in connection with that condition that was not considered by the ALJ. I conclude that there is no basis for reversal on this claim.

On his second claim, Plaintiff urges that the ALJ erred by failing to determine that Plaintiff required his cane for balance as well as standing. As a preliminary matter, Plaintiff argues that the verbiage in the hypothetical posed to the VE was unclear in that rather than inquiring about a sit/stand option, the question posed by the ALJ referenced the need to "sit and stand." Next, Plaintiff notes that while the medical evidence reveals he uses a cane to ambulate, it's possible that "[a]rguably, the cane used by Plaintiff in his right hand is used for balance to offset the shortness of the left leg, not solely to walk." If so, because the jobs listed by the VE would require the use of two hands simultaneously, Plaintiff would not be able to perform any of those jobs standing as his right hand would be occupied holding his cane. Thus, Plaintiff urges the matter be remanded to formulate a proper hypothetical to the VE that includes a provision that the jobs require the use of only one hand at a time in order to perform them. (Doc. 26 at 9-10).

13

In response, the Commissioner argues that there is no meaningful distinction in the ALJ's reference in the hypothetical of the "need to sit and stand" rather than sit *or* stand as these activities may not be performed simultaneously. Further, to the extent there was any confusion in the hypothetical, counsel was present at the hearing and could have clarified same but chose not to ask any questions. Thus, the Commissioner submits that the "need to sit and stand" utilized in the hypothetical to the VE adequately represented the sit/stand option found by the ALJ in the RFC.[6] As for the Plaintiff's claim that the hypothetical posed to the VE should have included a limitation that he needs a cane for balance or that he cannot perform jobs that require the use of both hands simultaneously, such limitations are not supported by the evidence of record. (Doc. 27 at 7-10).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

---

[6]In his decision, the ALJ found that, "the claimant has the residual functional capacity to perform a restricted range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) with a sit/stand option. The claimant ambulates with an assistive device and is limited to unskilled, routine, repetitive tasks." (R. 16).

14

The verbiage of the hypothetical at issue here assumed "that the claimant had a maximum residual functional capacity . . . [for a] restricted range of light work activity, restricted exertionally by the need to sit and stand, [and] the need to ambulate with the use of an assistive device, . . . ." (R. 326). As to Plaintiff's argument that the hypothetical was unclear based on the ALJ's use of the phrase "sit and stand" as opposed to sit or stand, I cannot agree. As noted by the Commissioner, such activities cannot be performed simultaneously, and thus I fail to see any confusion created by the wording "sit and stand" versus use of the more common term of art "sit/stand option." In any event, as further noted by the Commissioner, to the extent there was any confusion with the phrasing of the hypothetical, counsel could have clarified the matter by restating the question to the VE. Here, counsel chose not to do so. Further, there appears to have been no complaint to the Appeals Council on the issue.[7] (R. 9). Thus, I find no error on this claim.

As for the purported failure of the ALJ to include a limitation in the hypothetical for the use of only one hand, I find no such limitation supported by the evidence. While Plaintiff's administrative filings document his use of a cane to walk, there is no reference to

---

[7]The general rule in this circuit is that "[a]n argument not raised in an administrative hearing cannot be raised on appeal." *See Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 855 n. 5 (11th Cir. 1990) (citing *United States v. Tucker Truck Lines*, 344 U.S. 33, 35-36 (1952)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *cf. Sims v. Apfel*, 530 U.S. 103, 105-07 (2000) (holding that a claimant does not waive judicial review of an issue by failing to raise it before the Appeals Council but explicitly stating that whether a claimant must exhaust issues before the ALJ was not before it).

balance.[8] Nor was such a claim made before the ALJ. There, Plaintiff testified that he uses a cane and a brace to help him walk. He has used the cane since his 1985 accident when he had a "partial amputation of [his] left foot and . . ., the bone shattered severely so [he] needed a cane to walk." (R. 320). He wears a brace on his left leg to give him support otherwise he has "an aching pain in the left leg." (R. 321). As for the medical record, I can find only a single reference seemingly related to his use of a cane for balance which appears in the report of Dr. Greenfield. (R. 241). Otherwise, my review of the medical records reveals no other reference to the need to hold a cane for balance purposes. And, as for any reports addressing Plaintiff's functional capacity, no doctor or other examiner indicated that Plaintiff was limited to jobs that require the use of only one hand, nor did Plaintiff, by his own testimony, complain of such limitation. Thus, by my consideration, because the medical evidence did not support such a limitation, the ALJ was not required to include the "arguable" limitation that Plaintiff needed a cane to balance and could not perform jobs that required the use of two hands. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In sum, the medical and other evidence support that the ALJ posed an appropriate hypothetical question to the VE which accurately reflected Plaintiff's RFC and the VE's testimony constituted substantial evidence supporting the ALJ's finding that Plaintiff was not disabled.

---

[8]Plaintiff's filings make multiple references to difficulty being able to stand for long periods of time. (R. 117, 124, 141, 142, 143). Where an explanation is provided, it is due to pain; there is no reference to difficulty standing or the need for a cane due to problems with balance. *See, e.g.,* (R. 103, 124, 143).

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 22nd day of September 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record